UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HATRA VOGHOUEI, <u>et al</u>. | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 25-1893 (PLF) |
| SECRETARY OF HOMELAND SECURITY, <u>et al</u>., | ) ) ) | |
| Defendants. | ) ) ) | |

<u>OPINION</u>

This case is before the Court on the government's Motion to Dismiss [Dkt.

No. 37].[1]  The plaintiffs are six foreign nationals who are either primary or derivative applicants

for immigrant visas.  <u>See</u> Compl. ¶¶ 28-33.[2]  In connection with their visa applications, the

plaintiffs completed the necessary paperwork and attended interviews at their designated

consular offices.  <u>Id</u>. ¶¶ 62-66.  At the conclusion of those interviews, the plaintiffs were

informed that their applications were "refused" and would be placed in "administrative

processing."  <u>Id</u>. ¶¶ 67, 82.  The plaintiffs now contend that the government has unreasonably

---

[1]    The documents considered by the Court in connection with the pending motion include: Plaintiffs' Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief ("Compl.') [Dkt. Nos. 1, 10]; Notice of Voluntary Dismissal of Parties, Pursuant to F.R.C.P.41(a)(1)(A)(i) ("Notice") [Dkt. No. 25]; Defendants' Motion to Dismiss and Memorandum in Support Thereof ("MTD") [Dkt. No. 37]; Declaration of Alexandra Tate ("Tate Decl.") [Dkt. No. 37-1]; Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss ("Opp.") [Dkt. No. 39]; Declaration of Robert Jachim ("Jachim Decl.") [Dkt. No. 10-2]; and Defendants' Reply in Further Support of Motion to Dismiss ("Reply") [Dkt. No. 41].

[2]    Plaintiffs Artina Jamali and Hatra Voghouei have voluntarily dismissed their claims.  <u>See</u> Notice.

delayed the final adjudication of their visa applications, and they seek an order compelling the government to decide those applications promptly.  Upon careful consideration of the parties' written submissions and the relevant authorities, the Court will grant the government's motion and dismiss the complaint.

## I.  BACKGROUND

### A. Statutory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., governs the issuance of various types of visas to foreign nationals seeking entry into the United States. Pursuant to the INA, the State Department has promulgated numerous regulations pertaining to immigrant visas.  One such regulation provides that "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa [or] refuse the visa under INA 212(a) or 221(g) or other applicable law."  22 C.F.R. § 42.81(a).  Section 221(g) of the INA, in turn, provides that if an applicant fails to establish visa eligibility, the consular officer "shall" refuse the application.  See 8 U.S.C. § 1201(g); see also id. § 1361 (placing the burden on the applicant to establish eligibility).

The consular officer may, however, "choose to place an officially refused application in administrative processing," which allows the officer to "re-open and re-adjudicate" the previously refused application if additional information comes to light.  Karimova v. Abate ("Karimova"), No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) (per curiam) (citing 9 Foreign Affairs Manual ("FAM") § 306.2-2(A)(a)).  In the case of immigrant visa applications, the regulations provide that "[i]f a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility

on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). "Unless and until" a consular officer re-opens a visa application, the "application remains officially refused." Karimova, 2024 WL 3517852, at *2. "Because the visa application has already been officially refused, keeping the door open in administrative processing can only benefit, never hurt, the applicant's entry prospects." Id.

Under the Mandamus Act, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Under the Administrative Procedure Act ("APA"), a court may compel agency action that is "unreasonably delayed." Id. § 706(1). Under Section 706(1) of the APA, however, "a delay cannot be unreasonable with respect to action that is not required" by law. Norton v. S. Utah Wilderness All. ("Norton"), 542 U.S. 55, 63 n.1 (2004); see also id. at 64 ("[A] claim under [Section] 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.").

*B. Factual and Procedural Background*

Plaintiff Hassan Sabetamal is a dual national of Iran and Australia and the primary applicant for an immigrant visa. Compl. ¶ 72. Sabetamal's application includes his spouse, plaintiff Pouyan Ehyaei, as a derivative applicant. Id. Sabetamal and Ehyaei executed their visa applications during an interview with a consular officer in Sydney, Australia, on May 30, 2023. Id. ¶ 73. Following the interview, their visa applications were "refused" and placed into "administrative processing." Id. ¶¶ 73, 82. Sabetamal and Ehyaei were asked for additional information to support their applications, which they provided on June 2, 2023. Id. ¶ 73.

3

Plaintiff Amin Hekmatmanesh is a dual national of Iran and Finland and the primary applicant for an immigrant visa.  Compl. ¶ 74.  Hekmatmanesh's application includes his spouse, plaintiff Samina Gavahianjahromi, as a derivative applicant.  Id.  Hekmatmanesh and Gavahianjahromi executed their visa applications during an interview with a consular officer in Helsinki, Finland, on February 29, 2024.  Id. ¶ 75.  Following the interview, their visa applications were "refused" and placed into "administrative processing."  Id. ¶¶ 75, 82.  Hekmatmanesh and Gavahianjahromi were asked for additional information to support their applications, which they provided on March 6, 2024.  Id. ¶ 75.

Plaintiff Ehsan Javanmardi is a national of Iran and the primary applicant for an immigrant visa.  Compl. ¶ 76.   Javanmardi's application includes his spouse, plaintiff Fariba Khani, as a derivative applicant.  Id.  Javanmardi and Khani executed their visa applications during an interview with a consular officer in Guangzhou, China, on May 21, 2024.  Id. ¶ 77.  Following the interview, their visa applications were "refused" and placed into "administrative processing."  Id. ¶¶ 77, 82.  Javanmardi and Khani were asked for additional information to support their applications, which they provided on May 25, 2024.  Id. ¶ 77.

On June 4, 2025, the President issued Proclamation No. 10,949: Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats.  See Proclamation No. 10,949, 90 Fed. Reg. 24,497 (June 4, 2025).  That Proclamation restricts and limits the entry of nationals from twelve countries, including Iran, subject to certain exceptions.  See id. § 1(f); see also id. § 2(h)(ii) ("The entry into the United States of nationals of Iran as immigrants and nonimmigrants is hereby suspended.").  One week after the issuance of the Proclamation, a consular officer determined that Javanmardi and Khani, who are Iranian nationals, were ineligible for immigrant

4

visas pursuant to INA Section 212(f), 8 U.S.C. § 1182(f).  See Compl. ¶¶ 32-33; Tate Decl. ¶¶ 9-10.

The plaintiffs initiated this suit on November 26, 2024, in the U.S. District Court for the Middle District of Florida.  See Compl.  The plaintiffs allege that the government has unreasonably delayed the final adjudication of their visa applications, and they assert causes of action arising under both the APA, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361. See Compl. ¶¶ 98-138.  The case was transferred into this judicial district on June 17, 2025.  See Dkt. No. 27.  The Court then stayed the case for ninety days.  See Min. Order, Sep.  17, 2025. On January 14, 2026, the government filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  See MTD.  The plaintiffs filed an opposition on February 27, 2026, see Opp., and the government filed a reply on April 3, 2026, see Reply.  The government's motion is now ripe for decision.

## II. STANDARD OF REVIEW

*A. Motions to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure*

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and an act of Congress.  See Janko v. Gates, 741 F.3d 136, 139 (D.C. Cir. 2014); Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 30 (D.D.C. 2017).  Lack of subject matter jurisdiction is fatal to a court's authority to hear a case. See FED. R. CIV. P. 12(h)(3).  The plaintiff bears the burden of establishing that the Court has jurisdiction.  See Khadr v. United States, 529 F.3d 1112, 1115 (D.C. Cir. 2008); Walen v. United States, 246 F. Supp. 3d 449, 452 (D.D.C. 2017).  In determining whether to grant a motion to dismiss for lack of subject-matter jurisdiction, the Court must construe the complaint in the plaintiff's favor and treat all well-pleaded factual allegations as true.  See Attias v. CareFirst,

Inc., 865 F.3d 620, 627 (D.C. Cir. 2017).  The Court "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," and the Court need not accept a plaintiff's legal conclusions.  Disner v. United States, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting Speelman v. United States, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  In determining whether a plaintiff has established jurisdiction, the Court "may consider materials beyond the pleadings where appropriate."  Cumis Ins. Soc'y, Inc. v. Clark, 318 F. Supp. 3d 199, 207 (D.D.C. 2018).

*B. Motions to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure*

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must plead facts that "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570); see Spence v. U.S. Dep't of Veterans Affs., 109 F.4th 531, 539 (D.C. Cir. 2024).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022); see

6

Ashcroft v. Iqbal, 556 U.S. at 678. The Court considers the complaint in its entirety, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it liberally, granting the plaintiff "the benefit of all inferences that can [reasonably] be derived from the facts alleged," Sickle v. Torres Advanced Enter. Sols., LLC., 884 F.3d 338, 345 (D.C. Cir. 2018) (alteration in original). The Court, however, need not accept all inferences drawn by the plaintiff "if such inferences are unsupported by the facts set out in the complaint." Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016); see Ashcroft v. Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555); see also Kaempe v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.").

## III. DISCUSSION

### A. Mootness

As a preliminary matter, the government contends that the Court lacks subject matter jurisdiction over the claims brought by plaintiffs Javanmardi and Khani because those claims are moot. See MTD at 5-6. The mootness doctrine "limits federal courts to deciding 'actual, ongoing controversies.'" Clarke v. United States, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc) (quoting Honig v. Doe, 484 U.S. 305, 317 (1988)). "Even where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" Id. at 701 (quoting Transwestern

7

Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C. Cir. 1990)). "A case becomes moot . . . 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)).

The government asserts that Javanmardi's and Khani's claims are moot because their visa applications have been re-adjudicated and refused pursuant to INA Section 212(f). See MTD at 5-6; Tate Decl. ¶¶ 9-10. Because the Court cannot compel the government to act on visa applications that have already been finally adjudicated, the government contends, there is no longer a live controversy with respect to those two plaintiffs, and the Court cannot grant them relief. See MTD at 5-6; see also, e.g., Penn v. Blinken, Civil Action No. 21-1055 (TJK), 2022 WL 910525, at *3 (D.D.C. Mar. 29, 2022) ("The Court will dismiss as moot all claims asserted by the foreign plaintiffs whose visa applications have already been adjudicated . . . ."). The plaintiffs counter that Javanmardi's and Khani's claims are not moot because Section 212(f) is not a facially legitimate basis upon which to deny a visa application. They note that pursuant to federal regulation, a properly executed visa application must be issued or refused "under INA 212(a) or 221(g) or other applicable law." Opp. at 4 (quoting 22 C.F.R. § 42.81(a)). In the plaintiffs' view, because Section 212(f) speaks only to the President's ability to "suspend the entry of" noncitizens and says nothing about his authority to deny visa applications, that section is not an "applicable law" upon which to base a visa denial. Id. at 4-5 (first quoting 8 U.S.C. § 1182(f); and then quoting 22 C.F.R. § 42.81(a)).

The plaintiffs' argument regarding the validity of their visa denials pursuant to Section 212(f) has force. Indeed, several judges in this district "have held that the Department of State cannot rely on proclamations issued pursuant to 8 U.S.C. § 1182(f) to deny visa

applications." <u>Thein v. Trump</u>, Civil Action No. 25-2369 (SLS), 2025 WL 2418402, at *15 (D.D.C. Aug. 21, 2025) (collecting cases), <u>appeal dismissed</u>, No. 25-5338, 2026 WL 795261 (D.C. Cir. Feb. 17, 2026).  Ultimately, though, this question is not properly before the Court. That is because, as the government points out, the plaintiffs do not challenge in their complaint the validity of the government's adjudication of Javanmardi's and Khani's visa applications.  <u>See</u> Reply at 1-2; <u>see generally</u> Compl.  Rather, they allege that the "refusals" under Section 221(g) and subsequent placement into "administrative processing" were not "final adjudications" such that the government has unreasonably delayed deciding their visa applications.  <u>See</u> Compl. ¶¶ 98-134.  It is undisputed that the visa applications executed by Javanmardi and Khani have since been refused pursuant to a different statutory provision, Section 212(f).  <u>See</u> Tate Decl. ¶¶ 9-10; Opp. at 4.  Their claims therefore are moot.  If the plaintiffs Javanmardi and Khani wish to challenge the validity of those refusals, they must do so by filing a new complaint.

The Court therefore will dismiss as moot the claims brought by plaintiffs Javanmardi and Khani.

### B. Nondiscretionary Duty

The remaining plaintiffs challenge the government's alleged failure to timely adjudicate their visa applications, and they ask the Court to compel the government "to immediately and forthwith take all appropriate action to issue final decisions on [their] visa applications."  Compl. ¶ 18.  The plaintiffs seek such action under both the APA, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361.  <u>See id</u>. ¶¶ 98-134.[3]  To prevail under either

---

[3]    The Court notes that the government asks the Court to dismiss the complaint in its entirety, but it does not offer specific arguments with respect to Count III.  <u>See generally</u> MTD. In that count, the plaintiffs allege the government failed to provide written notice to plaintiffs Hekmatmanesh and Gavahianjahromi detailing the grounds on which their visas were refused, in

statute, the plaintiffs must make a "threshold" showing that the government has "failed to take a discrete agency action that it is required to take." Karimova, 2024 WL 3517852, at *1 (quoting Norton, 542 U.S. 55 at 64); see Skalka v. Kelly, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) ("The standard by which a court reviews this type of agency inaction is the same under both [Section] 706(1) of the APA and the Mandamus Act."). Put differently, the plaintiffs must identify a discrete, nondiscretionary duty that obligates the government to take further action on their visa applications. See Karimova, 2024 WL 3517852, at *1. The Court has no authority to compel a "discrete agency action that is not demanded by law (which includes . . . agency regulations)." Norton, 542 U.S. at 65.

Many of the provisions that the plaintiffs identify as potential sources of the government's nondiscretionary duty can be dispensed with in short order based on this Court's recent opinions applying the D.C. Circuit's Karimova decision. See Rajabi v. Rubio, ("Rajabi"), Civil Action No. 24-01968 (PLF), 2026 WL 252233, at *4 (D.D.C. Jan. 30, 2026); Hurtado v. Foley ("Hurtado"), Civil Action No. 24-3270 (PLF), 2025 WL 2757557, at *4 (D.D.C. Sep. 29, 2025); Datta v. Rubio ("Datta"), Civil Action No. 24-2937 (PLF), 2025 WL 752643, at *7 (D.D.C. Mar. 10, 2025). Citing to Section 555(b) of the APA, the plaintiffs argue that the government is "obligated under the APA to carry out [its] duties, including adjudication of properly filed visa applications, within a reasonable time." Opp. at 14; see 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and

___

violation of 5 U.S.C. § 555(b) and 9 FAM § 504.11-3(A)(1). See Compl. ¶¶ 135-38. The plaintiffs likewise do not mention Count III in their opposition to the government's motion to dismiss. See generally Opp. Because the parties treat Count III as subsumed by Counts I and II, the Court will do the same. Cf. Bartolo v. Whole Foods Mkt. Grp., Inc., 412 F. Supp. 3d 35, 43 (D.D.C. 2019) ("Plaintiff thus has swept the three counts together as Defendant has done. The court therefore will do the same." (citation omitted)).

within a reasonable time, each agency shall proceed to conclude a matter presented to it."). Notably, however, the plaintiffs concede that their visa applications have been "refused" pursuant to Section 221(g) of the INA. See Compl. ¶ 82. In Karimova, a case with materially similar facts to those at issue here, a unanimous panel of the D.C. Circuit explained that when a consular officer "officially refuse[s]" a visa application pursuant to INA Section 221(g), any duty that the officer may have had to adjudicate the application under Section 555(b) of the APA is discharged. Karimova, 2024 WL 3517852, at *4; see 8 U.S.C. § 1201(g). And that is so even if the consular officer proceeds to place the executed visa application into administrative processing. See Karimova, 2024 WL 3517852, at *4 ("Nothing in federal law speaks to the ability of a consul . . . to hold onto the [refused] application in case circumstances later change in the applicant's favor . . . ."). Simply put, an applicant who has been issued a refusal under Section 221(g) has received a "decision that the law expressly authorizes as one of the allowed actions on a visa application," regardless of whether the application is eventually "re-open[ed] and re-adjudicate[d]." Id. at *2, *4.

The plaintiffs assert that the court of appeals' unpublished opinion in Karimova is "nonprecedential and nonbinding." Opp. at 9.[4] Even if that is so, this Court has explained in prior opinions that it finds the D.C. Circuit's reasoning persuasive. See Rajabi, 2026 WL 252233, at *4 (adopting Karimova's reasoning); Hurtado, 2025 WL 2757557, at *4 (same); Datta, 2025 WL 752643, at *7 (same); see also Ariani v. Rubio, Civil Action No. 25-0349 (TSC), 2025 WL 3653503, at *4 (D.D.C. Dec. 17, 2025) ("[T]he court finds Karimova

---

[4]    Judges in this district are split as to whether the D.C. Circuit's unpublished decision in Karimova is precedential. See Datta, 2025 WL 752643, at *6 n.3 (collecting cases). The Court declines to wade into this debate and instead concludes that Karimova's reasoning is persuasive.

persuasive."); Kachooee v. Allen, Civil Action No. 25-00139 (TNM), 2025 WL 2986451, at *2 (D.D.C. Oct. 23, 2025) ("Karimova is persuasive."); Baradaran v. Rubio, Civil Action No. 24-2946 (DLF), 2025 WL 2506546, at *2 (D.D.C. Sep. 2, 2025) (concluding that Karimova's "reasoning is persuasive and applies here"); Pour v. Rubio, Civil Action No. 25-573 (JEB), 2025 WL 2374559, at *5 (D.D.C. Aug. 14, 2025) ("Regardless of whether Karimova is actually binding, it is still a case decided by the Circuit that contains reasoning that the Court finds persuasive as to the APA."); Doroodchi v. Rubio, Civil Action No. 24-3170 (CRC), 2025 WL 1865114, at *4 (D.D.C. July 7, 2025) (applying Karimova as "the considered and unanimous judgment of a D.C. Circuit panel").  Consistent with the D.C. Circuit's holding in Karimova— and this Court's decisions in prior cases—the Court rejects the plaintiffs' assertion that Section 555(b) of the APA imposes a further duty to act on a refused visa application that has been placed in administrative processing.  See Rajabi, 2026 WL 252233, at *4; Datta, 2025 WL 752643, at *7; Hurtado, 2025 WL 2757557, at *4.

The plaintiffs contend that, in any event, Karimova is inapt here because the plaintiffs have "invoked more specific legal authorities that were not considered in Karimova, including 8 U.S.C. §§ 1101 and 1202, and corresponding implementing regulations at 22 C.F.R." Opp. at 10 (citation omitted).  While it is true that the plaintiffs point to provisions of law that the court of appeals did not specifically address in Karimova, that decision nonetheless forecloses most of the plaintiffs' arguments based on those other sources.  That is because the "thrust of" the court of appeals' holding in "Karimova . . . is that an INA [Section] 221(g) refusal followed by administrative processing is a refusal." Rezvani v. Rubio, Civil Action No. 24-03381 (CJN), 2025 WL 1293358, at *1 (D.D.C. May 5, 2025); see also, e.g., Ibrahim v. Spera, Civil Action No. 23-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sep. 6, 2024) (rejecting the

12

argument that Karimova is "confined to the issue of whether the APA alone created a duty for the [government] to complete administrative processing" because "one cannot read Karimova as saying anything other than a [Section] 221(g) refusal and placement in administrative processing was a conclusion").  As this Court has explained elsewhere, although the provisions to which the plaintiffs point clearly obligate the government to adjudicate their visa applications, those provisions generally "stop short of creating a duty to further adjudicate a visa application that has already been refused by a consular officer and placed in administrative processing." Hurtado, 2025 WL 2757557, at *5; see Datta, 2025 WL 752643, at *8.

There is, however, a provision invoked by the plaintiffs that this Court has not previously had occasion to consider.  The plaintiffs argue that even if the government has satisfied its nondiscretionary duty to adjudicate by refusing their visa applications pursuant to Section 221(g), the government's duty to reconsider those applications under 22 C.F.R. § 42.81(e) remains.  See Opp. 23.  Section 42.81(e) provides with respect to immigrant visas specifically that "[i]f a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."  22 C.F.R. § 42.81(e).  Several courts, including many in this district, have concluded that Section 42.81(e) "by its plain terms imposes a nondiscretionary, ministerial duty to reconsider the denial of a visa application when the applicant adduces further evidence tending to overcome the ground of ineligibility."  Rivas v. Napolitano, 714 F.3d 1108, 1111 (9th Cir. 2013); see also Cepeda v. U.S. Citizenship & Immigr. Servs., 624 F. App'x 52, 53 (2d Cir. 2015); Shaheen v. Rubio, Civil Action No. 25-01186 (APM), 2025 WL 3030123, at *1 (D.D.C. Oct. 30, 2025); Aramnahad v. Rubio, Civil Action No. 24-1817-MAU, 2025 WL 973483, at *10 (D.D.C. Mar. 31, 2025); Makttoof v. Rubio

13

("Makttoof"), Civil Action No. 24-1344 (JDB), 2025 WL 928706, at *4-5 (D.D.C.

Mar. 27, 2025); Haeri Mehneh v. Blinken, Civil Action No. 24-1374 (ZMF), 2024 WL 5116521,

at *6 (D.D.C. Dec. 16, 2024).  But see Moradi v. Rubio, Civil Action No. 24-2902 (GMH), 2025

WL 1865110, at *11-12 (D.D.C. July 7, 2025) ("Section 42.81(e) does not impose a discrete,

nondiscretionary duty on the consular officer to complete the administrative processing of the

plaintiff's visa application." (citation modified)).

The government gives short shrift to the plaintiffs' invocation of 22 C.F.R.

§ 42.81(e), responding only that the plaintiffs "do not allege that they have 'adduce[d] further

evidence tending to overcome the ground of ineligibility on which the refusal was based.'"

Reply at 15 (quoting 22 C.F.R. § 42.81(e)).  The Court disagrees with the government's

assertion.  To the contrary, the plaintiffs have alleged that they timely submitted all of the

information that the government requested.  See Compl. ¶¶ 72-77.  "[I]t would rob [the

plaintiffs] of the reasonable inferences to which [they are] entitled on a motion to dismiss to

figure that the consular officer requested (and thus [the plaintiffs] submitted) irrelevant

information."  Makttoof, 2025 WL 928706, at *4.  Seeing as the government does not otherwise

develop an argument that Section 42.81(e) is inapposite, the Court will assume that the plaintiffs

have identified a mandatory obligation of the government to reconsider their visa applications, an

unreasonable delay in the performance of which could justify mandamus or APA relief.  See id.

at *5.  The Court therefore will proceed to evaluate the reasonableness of the government's

delay.  See Giza v. Blinken, Civil Action No. 20-1641 (CRC), 2024 WL 3967284, at *4 (D.D.C.

Aug. 27,  2024) ("Because the [plaintiffs] fail to allege an unreasonable delay as a matter of law,

the Court will assume, without deciding, that the State Department has a non-discretionary,

discrete duty to adjudicate their visa applications." (citation modified)); Mahmoodi v. Altman-

14

Winans, Civil Action No. 24-2010 (BAH), 2025 WL 763754, at *4 (D.D.C. Mar. 11, 2025) (collecting cases taking the same approach).[5]

### C. Unreasonable Delay

On the merits, the government argues that the plaintiffs have failed to state a claim for unreasonable delay for which relief can be granted. See MTD at 14-21. In evaluating whether a delay in agency action is unreasonable, courts balance six nonexclusive factors derived from the D.C. Circuit's decision in Telecommunications Research & Action Center v. FCC ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984). See Da Costa v. Immigr. Inv. Program Off. ("Da Costa"), 80 F.4th 330, 340 (D.C. Cir. 2023).[6] Those factors are:

---

[5]     The government also argues that "[b]ecause [the plaintiffs] are seeking to compel action after a consular officer has refused the requested visa, this suit runs headfirst into the consular non-reviewability doctrine." MTD at 11. In a previous case, this Court explained that while "judges in this district have concluded that . . . the consular nonreviewability doctrine does not apply" in cases that are similar to this one, the Karimova decision "casts doubt on the reasoning" of those decisions. Datta, 2025 WL 752643, at *5. But the Court explained that it did not need to "determine the extent to which Karimova upends prior decisions examining the consular nonreviewability doctrine because there are independent reasons to dismiss plaintiff's claims." Id. at *6. The same is true here. Because the plaintiffs' claims fail on the merits for the reasons explained below, the Court will assume, favorably to the plaintiffs, that the consular nonreviewability doctrine does not bar those claims.

[6]     The plaintiffs argue that "[u]nreasonable delay claims require fact-based inquiries not suitable for disposition at this stage of litigation." Opp. at 31. But "[t]here is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage, so the question of whether discovery is necessary depends, as with any sort of claim, on the particular [c]omplaint." Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 12 (D.D.C. 2022), aff'd, 80 F.4th 330 (D.C. Cir. 2023). If the complaint's allegations and materials properly considered at the motion-to-dismiss stage contain enough facts to evaluate the TRAC factors, "then a [c]ourt may appropriately decide to do just that." Id. Indeed, judges in this district routinely consider the TRAC factors at the motion-to-dismiss stage. See Tehran v. Rubio, Civil Action No. 25-1584 (JMC), 2025 WL 3551629, at *5 (D.D.C. Dec. 11, 2025) (collecting cases).

15

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency latitude in order to hold that agency action is unreasonable delayed.

TRAC, 750 F.2d R 79-80 (citation modified).

The first and second TRAC factors, which are often addressed together, see Milligan v. Pompeo ("Milligan"), 502 F. Supp. 3d 302, 317 (D.D.C. 2020), account for "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." Sawahreh v. U.S. Dep't of State, 630 F. Supp. 3d 155, 161-62 (D.D.C. 2022) (quoting Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin., 74 F. Supp. 3d 295, 300 (D.D.C. 2014)). In analyzing these factors, courts may consider "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Da Costa, 80 F.4th at 340 (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).

The plaintiffs argue that the length of the delay in the adjudication of their applications is "well over the range of six months intended by Congress for immigration benefits applications." Opp. at 38. In support, they cite to 8 U.S.C. § 1571(b), which provides that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). But the plaintiffs acknowledge that this "statutory language is merely precatory," Opp. at 38, or in the D.C. Circuit's words, nothing more than an "aspirational statement," Da Costa, 80 F.4th

16

at 344.  This nonbinding guidance "cannot be considered to set forth a congressionally imposed deadline."  Majlesi v. Rubio, Civil Action No. 25-614 (LLA), 2026 WL 654377, at *8 (D.D.C. Mar. 9, 2026).

Because there is no "congressionally supplied yardstick" governing the timeframe for visa adjudication, "courts typically turn to case law as a guide."  Milligan, 502 F. Supp. 3d at 318 (quoting Sarlak v. Pompeo, Civil Action No. 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).  The caselaw, in turn, acknowledges that "processing visas takes a baseline amount of time."  Khazaei v. Blinken, Civil Action No. 23-1419 (JEB), 2023 WL 6065095, at *6 (D.D.C. Sep. 18, 2023).  Consistent with that reality, "[d]istrict courts have generally found that immigration delays in excess of five, six, [or] seven years are unreasonable, while those between three to five years are often not unreasonable."  Makttoof, 2025 WL 928706, at *5 (alterations in original) (quoting Khazaei v. Blinken, 2023 WL 6065095, at *6); see also Tekle v. Blinken, Civil Action No. 21-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) ("Courts in this District consistently have held that two or three years does not constitute an unreasonable delay.").  Here, the plaintiffs have been waiting for their applications to be reconsidered for between two and three years—well within the length of delay that courts have considered not unreasonable in materially similar scenarios.  See Majlesi v. Rubio, 2026 WL 654377, at *8; Tekle v. Blinken, 2022 WL 1288437, at *3; Makttoof, 2025 WL 928706, at *5-6; Tahavori v. Blinken ("Tahavori"), Civil Action No. 23-1460 (JDB), 2024 WL 1328546, at *5 (D.D.C. Mar. 28, 2024); Shoaie v. Blinken, Civil Action No. 24-01513 (GMH), 2024 WL 4697732, at *11 (D.D.C. Nov. 6, 2024) (collecting cases).  The plaintiffs provide no persuasive reason why the Court should disregard the weight of authority on this

17

point.  The Court therefore determines that the first two TRAC factors weigh in the government's favor.

The fourth TRAC factor tells the court to consider the effect of judicial action on the agency's competing priorities.  See Tahavori, 2024 WL 1328546, at *5.  This factor often "carries the greatest weight" in the overall balancing.  Milligan, 502 F. Supp. 3d at 319.  Under this Circuit's precedent, a court will not compel agency action where the result would be merely to expedite the consideration of a plaintiff's application ahead of others.  See id. ("This Circuit has 'refused to grant relief, even though all the other factors considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" (citation modified) (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d at 1100)); see also Da Costa, 80 F.4th at 344 ("While judicial intervention could assist the Plaintiffs, it would likely impose offsetting burdens on equally worthy . . . visa petitioners who are equally wronged by the agency's delay." (citation modified)).  Put differently, "[t]he D.C. Circuit recognizes 'no basis for reordering agency priorities.'"  Mahmoodi v. Altman-Winans, 2025 WL 763754, at *9 (quoting In re Barr Lab'ys, Inc., 930 F.2d 72, 76 (D.C. Cir. 1991)).  The plaintiffs ask the Court to do just that: direct the government to prioritize their visa applications over those of other applicants.  But "[i]t would be improper for the [C]ourt to intervene and expedite [the] [p]laintiffs' visa applications at the expense of others."  Majlesi v. Rubio, 2026 WL 654377, at *9.  This factor thus strongly favors the government's position.  See Milligan, 502 F. Supp. 3d at 319; Tahavori, 2024 WL 1328546, at *5; Tekle v. Blinken, 2022 WL 1288437, at *4; Haeri Mehneh v. Blinken, 2024 WL 5116521, at *8.

18

The third and fifth TRAC factors "relate to the harm plaintiffs suffer from waiting and are commonly considered together." Makttoof, 2025 WL 928706, at *6. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" Milligan, 502 F. Supp. 3d at 319 (quoting TRAC, 750 F.2d at 80). The plaintiffs allege that the government's processing delay has caused harm to their "careers and finances," noting that they "have already spent [a] considerable amount of money on expenses related to the adjudication of their visas." Compl. ¶ 87. The plaintiffs also allege that they "have been unable to definitively plan for their futures, including seeking or accepting any new professional and academic opportunities" as a result of the government's delay. Id. The Court certainly is sympathetic to the plaintiffs' concerns, but "it must also be mindful that 'many others face similarly difficult circumstances as they await adjudication of their visa applications.'" Sivananthan v. Blinken, Civil Action No. 23-1181 (CKK), 2023 WL 4885858, at *4 (D.D.C. Aug. 1, 2023) (quoting Mohammed v. Blinken, Civil Action No. 20-3696 (TNM), 2021 WL 2866058, at *6 (D.D.C. July 8, 2021)). Moreover, these "primarily personal and economic hardships . . . are 'not of the severity or kind that other courts have found tilt the third and fifth factors in favor of similarly situated plaintiffs.'" Id. (quoting Punt v. U.S. Citizenship and Immigr. Servs., Civil Action No. 22-1218 (RC), 2023 WL 157320, at *5 (D.D.C. Jan. 11, 2023)); see Tahavori, 2024 WL 1328546, at *5. To the extent that these harm-based factors weigh in the plaintiffs' favor, they do so only modestly.

The sixth TRAC factor considers any impropriety on the agency's part. See TRAC, 750 F.2d at 80. The plaintiffs do not plausibly allege that the government has acted in

19

bad faith, see generally Compl., so this factor "either favors the [government] or is neutral." Makttoof, 2025 WL 928706, at *7.

Upon carefully balancing all six factors, the Court concludes that the plaintiffs' complaint fails to state an unreasonable delay claim. "'The most important factors—those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting [the government's] motion,' and the remaining factors 'are not strong enough to justify the opposite conclusion.'" Tahavori, 2024 WL 1328546, at *6 (quoting Meyou v. U.S. Dep't of State, Civil Action No. 21-2806 (JDB), 2022 WL 1556344, at *5 (D.D.C. May 17, 2022)). The Court therefore will grant the government's motion to dismiss.

## IV. CONCLUSION

For the reasons explained in this opinion, the Court will GRANT the government's Motion to Dismiss [Dkt. No. 37]. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 5|15|26

20